Good morning, Your Honors. Matt Christensen on behalf of the Appellant Brent Cherne. May it please the Court. There are several issues that need to be addressed. One more recent from the Court's notice last week regarding the mootness of the case. I'll address that issue first and then get to the substance of my client's arguments. At the time, this started as a claim objection proceeding in a bankruptcy case. At the time that claim objection proceeding began, it was not a no-asset case. It's an asset case. There was funds that the trustee was holding that could be distributed to creditors. This claim, the IRS's claim, is a fairly significant claim in the case. There are additional general unsecured claims. This is the only priority claim in that bankruptcy case. The trustee, for whatever reason, determined not to administer the assets she did hold solely for the benefit of those priority claims. That's the only creditor that would have been paid with whatever funds she had. The assets she did hold are currently residing at the court in Idaho. They have been paid into the court and it's now listed as a no-asset case. So I think one of the first points I'd make is that the no-asset report from the trustee can easily be withdrawn and it become an asset case again in the event the IRS claim is disallowed, then there are no other priority claims that would be paid and the trustee could then administer the funds that she did have for the remaining general unsecured creditors, which, because of the discharge, is the only way that those creditors would receive anything out of the bankruptcy case. You're much more familiar with bankruptcy than I am, obviously, but explain to me why you say that the no-asset finding by the trustees must be withdrawn? I don't mean it must be withdrawn. I'm saying it could be withdrawn if she determines she does want to administer those funds. It doesn't have to be withdrawn. There are some assets in the bankrupt estate and she's wrong about saying that there are no assets. Is that what you're saying? There were assets in the bankruptcy estate. The trustee, I think, acknowledged that she had assets but just determined not to administer those. And when she determines not to administer those, is that the final word as far as whether there are assets in a bankruptcy estate? No, because of the fact that she can withdraw the no-asset report. Has she given any indication she is going to withdraw her no-assets determination? Not on the record in the bankruptcy case or anywhere else. So as it stands now, the bankruptcy is a no-asset bankruptcy? As it stands right now, it's listed as a no-asset bankruptcy. And if it's a no-asset bankruptcy, why isn't this case moot? My first point is because it doesn't need to remain a no-asset bankruptcy. It can go back to no-asset. Can we order it to be no longer a no-asset bankruptcy or is that within our jurisdiction? I don't know whether it's within the jurisdiction. I don't think that's an issue before the circuit at this point. Aren't we faced, as we stand here today, or as we sit and you stand, with a no-asset bankruptcy estate? We have a no-asset bankruptcy estate. I don't disagree with that. So for today's purposes, why shouldn't we dismiss this case as being moot and allow some other procedure to take place in the bankruptcy court to establish a bankrupt state as to which the claim can be satisfied, if that's going to happen? I think that's one of the issues is I don't know that that would happen. What happens if you prevail here? If we prevail here and the IRS claim is disallowed, then, A, there's no further collection activity of that claim. It is a non-dischargeable claim. Right. And at that point, should the trustee decide to, she could then administer what assets she did hold for the other creditors that were in the case. There were other creditors. There were other creditors. There were not priority creditors. Those other non-priority creditors could receive the money. Correct. And can the trustee decide on Monday that there are no assets and Tuesday that there are assets? My understanding is yes, because she's paid the assets to the court and they're simply residing with the court. It's just money. They're waiting to see what happens here, I gather. I think the trustee is waiting to see what happens. I don't know for sure. I gather the reason why, really why it's not moot for your client is that he's really in a grieved party still, correct? Correct. And at this point he wants a determination that he's not responsible. You know, under the IRS code. Correct. And that's still an issue that will remain an issue. If this debt is not discharged, once the bankruptcy proceeding is over, he's still personally liable. If he is personally liable. Yeah, right. Well, I may have said that awkwardly, but that's the point. I don't think there's a dispute between the parties that whether or not the debt is dischargeable versus non-dischargeable. If it's a valid debt, it's non-dischargeable. He would still be liable for it. Our position is it shouldn't be a valid debt. And at this point we've got two federal court opinions, the bankruptcy court and the district court, that say it is. It is a valid debt. It is a valid debt. And I don't think there's any dispute that at least the bankruptcy court's decision, when it made that decision, it had full authority and jurisdiction to make that decision. At that point it was an asset case. And so there is some, I think, res judicata effect of those earlier decisions if the case stops here and doesn't proceed. So even though the trustee said it's an asset case, he could still get some meaningful relief from us? Theoretically. Correct. Theoretically. Correct. If it's a no-asset case and we dismiss it on the basis that it's moot, can the IRS proceed against your client in an independent action and collect a tax, or has the statute of limitations been ‑‑ would that be a bar? I don't think the statute of limitations is wrong. I think they could because these are taxes from, I believe, 2011. And what's the statute of limitations? I think it's 10 years, but I'm not entirely certain. So they could still pursue him. And the issue Mr. Cerny would then face at that point is he's now got two federal court decisions saying those are valid debts. And so I think he would have incredible difficulty trying to then argue in that collection proceeding, these aren't valid debts, no matter what form that proceeding is. For a moment now, why don't we assume that we have ‑‑ it's not moot. What's your argument on the merits? On the merits, Your Honor, I think everyone agrees that we're talking about a two-part test, whether the failure to pay the payroll taxes was willful, and that's really the second part of the test, and whether Mr. Cerny had a responsibility to make sure those payments got made. Really, we're challenging both sides of that. The responsibility aspect deals with how much control did Mr. Cerny have over those taxes being paid? How much control did he have over the company? I don't think we dispute that he was a financial officer of the company. He had an ownership interest in the entities. The issue is more the relationship that the hospital, which is the entity that we're talking about, had with its lenders and the control that those lenders had over what monies the hospital could spend. At the time that these taxes were incurred that the IRS is assessing, there was really two separate lenders, Clearwater and Millennium, in the picture. There was a security agreement that had been granted to Millennium that gave them a security interest in virtually everything that Florence Hospital owned, and Clearwater then was acting on behalf of Millennium, collecting all of the receivables that would come in, went to Clearwater. Practically, what would happen is Florence Hospital would craft a list of, look, here's what we need to pay this week. They send that to Clearwater. Clearwater says, well, we'll approve these certain things, and here's money to pay those things. The lists that were provided always included payroll taxes. The approvals that were made almost always did not include payroll taxes. Didn't your client make a recommendation that payroll taxes not be paid? There is, in the record, one email where he made that recommendation, but in that case, the payroll taxes were actually paid, the ones related to what that email was. Well, that seems to indicate that he had some say. He was a participant in the process of explaining to Clearwater why they needed these payments to be made, but the decision on what funds would be released by Clearwater to Florence was always made exclusively by Clearwater. He was there, Mr. Tierney was there, to advise them, to discuss what needed to be paid and why, but there never was a case where Clearwater provided funds to the hospital to pay payroll taxes that the hospital then chose to use to pay for something else. They just weren't paid the funds by Clearwater to pay those taxes. You know, the cases, the Nakano case recognized, look, it's a trust fund. That's why we call these trust fund taxes. Once the party collects the funds, they're holding them in trust for the government. Our position is Florence Hospital and Tierney never collected those funds. They never held them in trust. Clearwater did. But the way the cases are applied. I don't quite understand that. How could that possibly be? The Clearwater held the funds? The hospital was paying out the salaries, right, to the employees? Correct. And they were withholding the taxes? The hospitals never actually had the tax amounts to withhold. Clearwater still held those amounts. Well, by operation of law, they were withholding them. I couldn't hear that. Excuse me. By operation of law, they were withholding them. Correct. But it's not as if the hospital had some account with the funds. I don't see how you can say that they were in trust to the, was it Millennium or whoever the other creditors were? Clearwater. Clearwater. The funder. The reason I'm saying that Clearwater held the funds is because they did. All of the income, all the receivables, went to Clearwater. And then Clearwater would then distribute to. The taxes. Or the taxes receivables. The funds to be used to pay the taxes always came from receivables. That's all that the hospital had as far as income. Well, plus a loan from Clearwater. Well, at that point, Clearwater wasn't loaning new funds. They were churning the receivables and using those to pay the ongoing expenses. Well, the hospital was collecting some money. Through Clearwater. There wasn't, at this point, it was. Let me ask you this. They didn't get any money from patients that they served? The bulk of the funds that came in came from insurance companies that all went directly to Clearwater. Through the hospital to Clearwater. Through Clearwater to the hospital. Let me ask you this. The insurance companies, does the record show that the insurance companies were paying patient bills when they released their funds? Released the funds directly to Clearwater? I think what the record shows is there weren't funds being directly released to, oh, excuse me, you said to Clearwater. Yes, that's who they were releasing the funds to. The insurance company was paying Clearwater and not the hospital? Correct. Kind of an interesting scenario. Well, that's what Clearwater needed in order to continue to help funding that hospital. And that's the only way they could keep the hospital open. I think that fact, the fact that it's a hospital, is something that sometimes gets lost, too. The IRS would have Mr. Cherney simply quit or choose to use the funds they did have to pay the hospital bills, you know, the utility bills, the patient treatment, that sort of thing. Rather than using them for those, you need to use them to pay the payroll taxes. So what you're saying is that the cash never was in hospital hands, which would be Cherney's hands. Cash went to Clearwater. Cash went to Clearwater. There was cash that Clearwater would then authorize be paid to the hospital, but only for these certain things to be paid. And so for the hospital then to take the cash that had been authorized for those payments and use them for something else, one, practically wasn't possible because of the fact that it's a hospital. They need to keep the doors open. They need to keep the patients being treated. And number two, it then would breach the agreement that they had with Clearwater, which really gets to the second point, whether there was an encumbrance over those funds. Our position is there was. The creditor was the one who was holding the funds. Creditor had a security interest in all those funds. The message that's been sent to creditors is, hey, if you want to control this entity, that's fine. We're not going to impose any sort of liability on you for doing that. And that's what we think needs to change. There needs to be a recognition that once the creditor steps in and actively controls that company, that person is the one now controlling and responsible for those payroll taxes. So the IRS should be going against Clearwater. Correct. Mr. Churney or anybody else at the hospital. That's correct. Do you want to save your time for rebuttal? I want to save the rest of my time if I can. Okay, that's fine. Thank you. Thank you. Good morning. May it please the Court. I'm Rachel Woolitzer, representing the appellee of the United States. The Court's below correctly held that Mr. Churney was a responsible person who willfully failed to pay the trust fund taxes at Florence Hospital and was therefore liable for the trust fund recovery penalties assessed against him pursuant to 6672. Ms. Woolitzer, do you disagree with the relation of facts as to who had actual control of the cash from the receivables, from the insurance company that your learned friend Mr. Christensen recited? Do you disagree with those facts? Yes, I do, Your Honor. Okay, let's hear your version of the facts. On a number of levels. All right. First, it's a legal matter. Responsibility under 6672. Pardon me. Talk to me about the facts. The facts. Okay, yes. Who was paying who with what money? Yes, Your Honor. Right? I will say that the critical thing here is that any time money, regardless of where the receivables or insurance payments or patient payments were going into the company, any time money was paid out of the company, it was paid from Florence Hospital accounts. And once the money hit those accounts, that became Florence Hospital funds, and they had to go to the taxes, the trust fund taxes. Any failure on Mr. Turney's part not to pay those funds, any funds of Florence Hospital to the trust fund. What do you think would have happened if in January of one year, the funds that were deposited with instructions from Clearwater as to who to pay had been disregarded by Florence Hospital, and they paid you instead of Florence Hospital? What would have happened in February of that month? Okay. Again, Your Honor, this does get back to the law. Doesn't that go to the issue of willfulness? Yes, Your Honor. It actually bears on responsibility and willfulness, because responsibility is a matter of significant control. That is all that is required. Not exclusive control, not final control, not final say, just significant control. And status, duty and authority. So Mr. Turney's attorney said they don't dispute that he satisfied the checklist of all the items that you normally look to in determining responsibility. He was the check signer, signed the tax returns. Wasn't that a ministerial task as far as Mr. Turney was concerned, because Clearwater told him you've got to pay these items and nothing else? Your Honor, he did have authority. He wasn't just an accountant or a bookkeeper. He was an officer. He had an ownership stake in the company. He loaned personal funds to the company. He had the status, duty and authority. Was he an officer of Florence Hospital? Yes, Your Honor. I thought that he was a member of Initiatives, LLC. And Initiatives, LLC had some relationship with Florence Hospital. But was Florence Hospital a corporation? And if Mr. Turney was an officer, would you please state for me the title of his office? Okay. So Mr. Turney was the CFO of Initiatives Healthcare, and Initiatives Healthcare was the majority member of Healthcare of Florence and the manager of Florence Hospital. All right. So there was a chain. Just a second. Majority member sounds to me like an LLC, not a corporation, right? And Initiatives was a majority member of Florence, which was itself an LLC. So therefore it's not quite accurate to say that Mr. Turney was an officer of a corporation. Florence Hospital was not a corporation, neither was Initiatives, LLC. Okay. So does that make a difference whether he's an officer or not? No, Your Honor, because as a practical matter, Initiatives Healthcare was the manager of Florence Hospital, and therefore his function as a CFO was sufficient to give him control. He hired the CFOs of Florence Hospital. He may not have been the CFO of Florence Hospital, but he hired the CFOs of Florence Hospital. So it comes back to the issue of did he have significant control as a practical matter, because you're talking about a practical matter. Exactly. Now, how do you — maybe I've got this wrong, but I heard Mr. Christensen say that as a practical matter, if Mr. Turney didn't follow Clearwater's instructions as to who to pay, he wouldn't get any more money the next month, right? Okay. Your Honor, the significant control that an officer has may not be delegated to a financial institution. Well, but you're assuming something not in evidence, which is that he has significant control. Maybe it can't be delegated, but the question we have, did he have significant control over who got the money out of the hospital? He did have it to begin with by virtue of his status, duty and authority and his responsibility and his position within the company. The question is, did he have significant authority when he got the cash? He delegated it to the bank. He participated. He didn't say I refuse to participate in this arrangement. That's true. I'm going to quit. I can't do this. If I participate in this arrangement and allow Clearwater to tell me not to pay payroll taxes, I will be liable. He did not do that. And the cases are clear. The Bradshaw case and the Kalb case discussed in our brief on page 30 are clear, that if an officer participates in an arrangement that gives banks prior approval of disbursements, they are responsible. And here, Chern ---- I gather that he seemed to acknowledge that, what you're just saying, but their argument was, well, these funds are encumbered. Really, the real heart of their argument, I thought, was more that these funds were encumbered and there's just nothing he could do. Correct, Your Honor. And that goes to the question of willfulness. And it's very important to focus on the underlying principles of willfulness, because a responsible person is considered willful as a matter of law when he permits funds of the corporation to be paid to other creditors when he is aware that he is not. Your position is he should have just quit. Well, that was one option. Or he could have consulted with the other principles of the company and decided whether to file for bankruptcy or try to find another lender or suspend operations, because any money coming into the company from any source must be paid to the creditors. Clearwater cannot override the word of Congress in 6672, which says I think the suggestion was made maybe you should be suing Clearwater. Well, Your Honor, Clearwater could be held liable under 6672. However, the IRS has the right to go after any and all of those responsible. So if there are ---- if there's a CFO or a president or even a lender that has control and that does not have any money and did willfully fail to pay, then the IRS can go after all three, any of the one, any one. So just because Clearwater may have some culpability here doesn't mean that Mr. Cherney does not. And a very important point here, going back to the idea that these trust fund taxes are supposed to be held in trust. So once you pay net wages without remitting the trust fund taxes, that constitutes willfulness as a matter of law. And this is clearly stated in this Court's opinion in Sorensen, which is discussed in our brief on page 35. The employers, when faced with the choice between paying net wages without remitting trust fund taxes or paying net wages without remitting the trust fund taxes, the employers must prorate available funds between the trust fund taxes and the employees' wages. So in other words, if you only have a certain amount to pay the wages and you don't have enough to pay the wages and the taxes, then you reduce the wages and then use the leftover amount to pay the trust fund taxes. The Cherney's conduct in allowing the payment of net wages constituted willfulness as a matter of law. And Mr. Cherney also allowed Florence Hospital to continue operating and pay other expenses instead of the taxes. Now, the unencumbered funds doctrine does not apply here. Why not? Okay. The Court in Nakano has articulated, this Court in Nakano has articulated a very detailed standard for this doctrine. Where the taxpayer is legally obligated, funds are encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability. And if that legal obligation is superior to the interest of the IRS in the funds. Do you have an example? Correct. Excuse me, Your Honor? Do you have an example that illustrates? Of what would satisfy that? Of what you just said? What you just read to us? Okay. Of what would satisfy or what would? What would satisfy an encumbrance? So a taxpayer could say, I'm not responsible, these funds were encumbered, and end of story. If there were a statute, regulation or ordinance that required the payment of the funds to another purpose rather than payment of the trust fund taxes. And that's the only possibility? Well, in the Court, the Sixth Circuit in Bell did specifically adopt that standard that a contractual restriction would not be sufficient. The Court in this Court. Is a contractual restriction excluded from this? We would argue it is, Your Honor. Is it in the statutory language? Is it in the text of the statute? Of 6672? No, Your Honor. The unencumbered funds doctrine is not in the statutory language. So if we focus just on the language, then there wouldn't be an exception and it wouldn't benefit the taxpayers. This is a way for, it's basically a limitation on the taxpayer's liability. It most frequently comes into play where a responsible officer becomes responsible and willful after the taxes have already accrued. And so, therefore, there is a duty to use unencumbered funds to satisfy. That's why the word preexisting employment tax liability is in there because you're talking about taxes that have already accrued. Well, here, Mr. Cherney was responsible and willful the whole time, throughout the whole period. He was the one who participated in the decision and actually paid the net wages without paying the taxes from the time that the taxes accrued. So that is why the test is not satisfied. And it doesn't really even apply in this context. But in terms of the argument that contractual restrictions cannot satisfy the test, although Nakano involved statutes, so it didn't address specifically the issue of contractual restrictions, the Bell case, which is cited in Nakano, clearly held that a lockbox arrangement with a bank did not render company funds encumbered where no statute or ordinance prevented payment of the taxes. Any other rule would encourage failing businesses to contract away their obligations to pay their trust fund taxes. So here Cherney should have, again, shut down the company, this bears on willfulness, suspended operations, resigned, filed for bankruptcy, or repudiated the arrangement with Clearwater rather than not pay the taxes. In addition, when you look at, when you break this down, I believe that Mr. Cherney is relying on the informal arrangement with Clearwater as well as the security agreement with Millennium Funding that they seek to add to the record in their motion to supplement the record. The Clearwater arrangement, they admit, was an informal, unwritten arrangement. Well, this arrangement can hardly be said to be even legally enforceable. So there wouldn't be, then it's not a legal obligation. It's an informal. Why can't an informal agreement be legally enforceable? You're saying an oral agreement can't be enforced? Is there some statute of frauds issue here? No, Your Honor, because it also has to be superior to the interest of the IRS. So it can't be. But even a formal agreement wouldn't be superior to the interest of the IRS. So whether it's formal or informal is not... Correct. It has to be perfected. But, Your Honor, I would like to address the Millennium Funding. Debtor has shown no extraordinary circumstances justifying the inclusion of the Millennium Funding agreement in the record. And I would also like to add that the agreement, in fact, required the payment of trust fund taxes. This is in Exhibit 2 to the motion, Bates page, Bates numbered page churn 010459. I apologize for using up my time. You did not talk about jurisdiction. I need you to address that. Okay, Your Honor. We agree with the ‑‑ I agree with the characterization of the Debtors' Council regarding the relationship between the no asset asset characterization, and I would just add that... There is money sitting in the registry of the court? Your Honor, I'm not aware of exactly what's sitting in the registry of the court, so I'm deferring to the Debtors' Council on that. But I would say that regarding the court's specific question about mootness, there does remain a live controversy between the government and the debtors about whether Mr. Chern is liable for these taxes, and there would be practical consequences to the ruling. Okay. You're leaving me up in the air. What's your position as to the mootness? Is this case moot because of the finding by the trustee that there's no assets in this particular bankrupt estate? No, Your Honor. The case is not moot because when you look at the broad question of mootness and the justiciability factor, you're looking at the personal stake of the parties in the outcome. And here, the debtors clearly have a personal stake and an interest. But you can vindicate that personal stake of the IRS directly against Mr. Cherny by an action to recover the taxes. Yes, Your Honor, we could bring a separate action. Well, you were brought into the bankruptcy. He filed the claim on your behalf. Yes, he did, Your Honor. Thank you for pointing that out. Yes, and also we couldn't file a suit during the bankruptcy, either. All right, so thank you for clearing that up. Thank you. I believe you had a minute or two for rebuttal. And I'll try to take all of it. Well, that's not necessary. Just a couple of quick points, Your Honor, I think in response to some of the argument from the IRS. First, with regard to delegating significant control, I think it's important to point out that Mr. Cherny was not part of the decision to grant Clearwater the ability to dictate what was being paid. In fact, he objected to that once he learned about it, but the decision and the agreement had already been made by the CEO of the company. The IRS also seemed to recognize that they could potentially go after Clearwater as a responsible party. I think the problem with that is that would require a recognition that Clearwater was a responsible party that had control. And if Clearwater had control, then Cherny couldn't have had control. So it's one or the other. Lastly, with regard to the contractual restrictions being a form of encumbrance, they referenced the Bell case that didn't recognize contractual restrictions. I would simply reference the Honey case that did recognize contractual restrictions, so long as the creditor was actually taking steps to control what was happening with the funds. And on that, I'll rest unless there's further questions. Thank you. Thank you, counsel, very much.
judges: Paez, Bea, Lamberth